IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL YOUNG, | No. 2:15-CV-0663-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 24).

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff initially applied for social security benefits on May 30, 2007. In the application, plaintiff claims that disability began on March 20, 2007. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 7, 2010, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a March 25, 2011, decision, the ALJ concluded that plaintiff is not disabled. The Appeals Council denied review on January 18, 2012, and plaintiff initiated an action in this court for judicial review. See Young v. Colvin, 2:12-CV-0637-EFB. On September 30, 2013, the court issued an opinion remanding the matter to the agency for further consideration.

Pursuant to the remand order, the Appeals Council issued an order on January 14, 2014 directing the ALJ to hold a new hearing and render a new decision. The remand, however, was limited to the issue of disability prior to December 1, 2011. Specifically, the Appeals Council noted:

> The claimant filed subsequent claims for. . . benefits on February 22, 2011, and it was determined by the State agency that he became disabled beginning December 1, 2011. The Appeals Council has reviewed the evidence in connection with the subsequent claim and finds no basis to disturb it.
>
> The Appeals Council affirms the State agency's determination that the claimant was disabled beginning December 1, 2011. Further, the Appeals Council vacates the Administrative Law Judge's decision and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court. The scope of this remand is limited to the issue of disability prior to December 1, 2011.

A second hearing was held before the same ALJ on August 27, 2014. In a January 15, 2015, decision, the ALJ again found that plaintiff was not disabled prior to December 1, 2011, based on the following relevant findings:

1. During the relevant time period, the claimant had the following severe impairment(s): history of congestive heart failure; non-ischemic dilated cardiomyopathy, hypertension, obesity, and a history of substance abuse in partial remission;

       2.      During the relevant time period, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

       3.      During the relevant time period, the claimant had the following residual functional capacity: the claimant could perform sedentary work; he could lift and carry 10 pounds occasionally and frequently; could stand and walk for two hours of an eight hour day with normal breaks; could sit for six hours of an eight hour day with normal breaks; he could not climb ladders, ropes, or scaffolds; and he needed access to a bathroom facility besides normal breaks on a frequent basis; and

       4.      During the relevant time period, the claimant could perform his past relevant work as a mortgage banker.

After the Appeals Council declined further review, this second action for judicial review followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of

3

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ "failed to provide a full and fair credibility determination" regarding plaintiff's claims of frequent urination as a side effect of medications; (2) the ALJ failed to develop the record regarding plaintiff's claim of frequent urination; and (3) the ALJ failed to provide clear and convincing reasons for rejecting treating and examining medical source opinions regarding frequent urination.

#### A.    **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted

by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues:

> In November 2011, Plaintiff's treating doctors at Sutter noted "chronic renal insufficiency versus azotemia due to medication and overdiuresis."  Treating doctor Kanwar noted that: "renal insufficiency which is possibly chronic due to hypertensive renal disease but it also can be due to medication which can be adjusted and changed as an outpatient especially cutting down on his diuresis."  Treating doctors at Placer noted increased urinary frequency in 2014 and Dr. Chiong noted that plaintiff's statements were adequate and credible when he saw him and told him he had to be near a bathroom because he "pees a lot."

According to plaintiff: "The ALJ rejected and mischaracterized the opinions of both plaintiff's treating doctors and the consultative examiners hired by Social Security itself."  Plaintiff adds:

> The ALJ did not provide specific and legitimate reasons for rejecting the treating doctors at Sutter and Placer's opinions that plaintiff has frequent urination.  Their opinions were buttressed by the opinion of Dr. Chiong when he noted that plaintiff was credible at the time he reported needing to be near a bathroom because he pees a lot.

/ / /

1. Treating Source Opinions

Plaintiff argues that the ALJ erred with respect to treating source opinions from "Sutter" and "Placer" regarding frequent urination. Plaintiff, however, identifies no such opinions. In fact, in plaintiff's summary of the medical records before December 1, 2011, he mentions records from Sutter Roseville Medical Center and, specifically, records from treating physician Gurinder J.S. Kanwar, M.D. As to these records, plaintiff does not identify any opinions regarding frequent urination. Instead, he notes that Dr. Kanwar diagnosed renal insufficiency possibly due to hypertensive renal disease or possibly due to medication. These equivocal statements hardly constitute a treating source opinion as to frequent urination or the effects this problem may have on plaintiff's ability to function.

With respect to "Placer," plaintiff's brief references records from Placer County Medical Clinic after December 1, 2011, which are not relevant to the time period at issue in this case. In any event, plaintiff's own summary of these records do not reference any treating source opinions regarding frequent urination. According to plaintiff, a review of symptoms in 2014 included increased urinary frequency. Again, this does not constitute a treating source medical opinion as to the effect, if any, this problem had on plaintiff's ability to function during the relevant time period.

Contrary to plaintiff's assertion, the ALJ did not reject or mischaracterize any treating source opinions regarding urinary frequency for the simple reason that none exist in the record.

2. Dr. Chiong

As to Dr. Chiong, the ALJ stated:

> In October 2014, after hearing, the claimant underwent a cardiology evaluation by consulting examiner of Internal Medicine Aung-Win Chiong, M.D., who reviewed some medical records from 2010-2011. He found increased AP diameter of the chest, diminished breath sounds with prolonged inspiration, no rales or ronchi. Blood pressure was 105/70, pulse was 88 beats per minute, and examination showed distant heart sounds, PMI not well defined, no right nor left ventricular heave was

1   noted, and SI, S2 were normal.  Extremities showed trace edema, absent
2   hair growth, moderate degree of stasis dermatitis, pedal pulses normal,
    neurological exam was within normal limits.  An ECG showed normal
3   sinus rhythm, normal intervals, no arrhythmias, mild early repolarization
    changes.  He diagnosed congestive heart failure, left ventricular
4   hypertrophy with diastolic dysfunction, ejection fraction has improved
    from 25% to 40% to 75%, but he continued symptomatic with probable
5   severe diastolic dysfunction based on history.  He indicated that this, and
    the claimant's morbid obesity (at the time of this exam the claimant
6   weighed 320 pounds) would limit activities (Exhibit 16F).

7  The ALJ next noted that plaintiff did not complain to Dr. Chiong of frequent urination as a side

8  effect of medication, stating simply that he "pees a lot" when reporting his activities of daily

9  living.  As to Dr. Chiong's opinions, the ALJ stated:

10       Consulting examiner Dr. Chiong opined he can perform light exertional
         work in that he can lift and carry twenty pounds occasionally and ten
11       pounds frequently; can stand up to two hours per day; he can walk up to
         one-two hours per day; can sit up to six hours of an eight hour day; he can
12       occasionally balance, stoop, kneel, crouch, crawl, and never climb; should
         not work at heights, or about moving machinery, nor operate a commercial
13       motor vehicle (Exhibit 16F).  Substantial weight is accorded this opinion,
         which is similar to that of Drs. Sheehy and Pong as it primarily finds a
14       capacity to perform sedentary exertional work.  For the same reasons, the
         undersigned finds it is supported by the clinical findings and the results of
15       diagnostic testing contained in treating source records including findings
         of Drs. Gamp, Breen, Fischer, and Brown.  It is supported by findings of
16       these treating sources that the claimant's cardiac condition was usually
         well-compensated with medication and found to be Class I or II under
17       New York Heart Association guidelines, despite the claimant's obesity and
         his continued alcohol and tobacco use.  It is supported by these sources
18       telling the claimant to increase his activity level and exercise more.
         However, little weight is accorded to Dr. Chiong's opinion the claimant
19       can lift and carry twenty pounds occasionally and ten pounds frequently,
         cannot operate a commercial motor vehicle – this element is inconsistent
20       with the opinions of Drs. Sheehy and Pong, and not well supported by the
         record overall.  The language of commercial motor vehicle is also not
21       specifically defined.

22       Plaintiff argues that Dr. Chiong expressed an opinion regarding frequent urination

23 that "buttressed" the opinions of treating sources.  Plaintiff does not, however, say what that

24 opinion is and, upon review of Dr. Chiong's report, the court does not find that Dr. Chiong

25 expressed any opinions regarding frequent urination.  As the ALJ noted, Dr. Chiong does not list

26 frequent urination as one of plaintiff's complaints.  The only mention of urination is in Dr.

7

Chiong's report of plaintiff's statements concerning daily activities – "he pees a lot."  Plaintiff did not report frequent urination as a side effect of medication, and Dr. Chiong did not note any medication side effects in his report.  Given that Dr. Chiong expressed no opinions regarding frequent urination or side effects of medication, the court finds no error in the ALJ's analysis of the doctor's opinions in this regard.

### B. Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in

8

1    Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

2    The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

With respect to the credibility of plaintiff's complaints of frequent urination, the ALJ summarized plaintiff's relevant allegations as follows:

> At his hearing on August 27, 2014, he testified that side effects of his diuretic medication cause frequent urination and fatigue.  He described his medications – two types of hypertension medications, heart medications, diuretics to prevent the build-up of fluids about the heart and swelling about the lower legs, as well as three different inhalers. . . .

The ALJ then engaged in a lengthy discussion of the medical evidence of record and stated:

> The claimant has testified to a need for frequent urination due to taking Furosemide; that he requires bathroom usage 4-5 times an hour (testimony 5/7/2010 hearing).  At the most recent hearing the claimant testified his medications caused him to need to use the bathroom 6-7 times an hour, and leave him fatigued (testimony 8/27/2014 hearing).  However, a careful review of the medical records as detailed above shows little evidence that the claimant suffers from frequent urination; generally he does not report side effects of medications.  He does not address this as a symptom of medication side effects in describing to consulting examiner Dr. Chiong his lengthy description of congestive heart failure as he experiences it.  He simply states at activities of daily living that "He has to be close to a

bathroom as he pees a lot" (Exhibit 16F/12). The undersigned finds the frequency of urination per hour he testified to is not supported by any significant evidence in the medical records. However, his need for frequent urination is accommodated by including in the residual functional capacity a requirement that he needs access to a bathroom facility besides normal breaks, on a frequent basis.

According to plaintiff: "The ALJ had to cherry pick his way through the record to come up with that conclusion." The court does not agree. Other than plaintiff's own subjective statements, plaintiff does not point to any objective evidence that he requires bathroom breaks up to 7 times per hour. Instead, plaintiff notes Dr. Chiong's report which merely reiterates plaintiff's statement to the doctor regarding frequent urination. Plaintiff also points to a note from Dr. Kanwar that plaintiff has renal insufficiency which is possibly chronic or possibly due to medication. These equivocal statements are hardly definitive and do not constitute substantial objective evidence to support plaintiff's subjective statements regarding urinary frequency. Finally, plaintiff's reference in his brief to notes from treating doctors at Sutter in 2012 are irrelevant to the time period at issue in this case which closed on December 1, 2011.

In any event, as the ALJ noted, urinary frequency is accounted for in the ALJ's finding that plaintiff requires access to bathroom facilities "on a frequent basis." Thus, despite the lack of supporting objective evidence, the ALJ gave plaintiff the benefit of the doubt with respect to his subjective complaints of urinary frequency.

### C. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may

discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

The court finds that the record was not ambiguous and the ALJ made no finding that the record was inadequate with respect to urinary frequency or the effect this problem may have had on plaintiff's ability to function during the relevant time period.  Instead, the record is clear that there is no evidence that urinary frequency adversely affected plaintiff's ability to work except as noted by the ALJ, i.e., that plaintiff would require frequent bathroom breaks.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 24) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 29, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE